```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE MIDDLE DISTRICT OF GEORGIA
                       COLUMBUS DIVISION

THOMAS WILLIAMS,                 *

     Plaintiff,                  *

vs.                              *
                                        CASE NO. 4:20-CV-215 (CDL)
NATHAN TOOLEY,                   *

     Defendant.                  *
```

O R D E R

A Columbus Police Department officer pulled over Thomas Williams for driving without headlights illuminated. The officer requested backup, and Columbus Police Corporal Nathan Tooley responded to the scene. Tooley conducted a warrantless search of Williams's vehicle and found a gun and ammunition. Williams was arrested for being a felon in possession of a firearm. In the criminal action against him, Williams filed a motion to suppress evidence of the gun and ammunition. The Court held an evidentiary hearing and concluded that, although the initial stop of Williams's vehicle was legal, Tooley's warrantless search of the vehicle violated the Fourth Amendment. *United States v. Williams*, 409 F. Supp. 3d 1340, 1342 (M.D. Ga. 2019). After the criminal action against him was dismissed, Williams brought this pro se action against Tooley, alleging various claims under 42 U.S.C. § 1983 based on the warrantless

search and the arrest.  Tooley now seeks summary judgment on all claims against him.  For the reasons set forth below, Tooley's motion (ECF No. 23) is granted.

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A fact is *material* if it is relevant or necessary to the outcome of the suit.  *Id.* at 248.  A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party.  *Id.*

## FACTUAL BACKGROUND

There are no disputes about the facts.[1]  Around midnight on October 25, 2018, Williams was driving his girlfriend's vehicle in a high crime area in Columbus, Georgia with the headlights off.  A Columbus police officer initiated a traffic stop and

---

[1] Tooley's statement of facts is supported mostly by the transcript from the evidentiary hearing on the motion to suppress in the criminal case and by the Court's order on the motion to suppress.  Williams did not respond to the summary judgment motion or to the statement of material facts.

called for backup.  The officer asked if she could search the car, and Williams declined.  The officer ran a license check of Williams's license.  It did not reveal any outstanding warrants, but it did disclose that Williams was a known gang member who should be considered armed and dangerous.

Tooley, a police corporal, arrived on the scene while the other officer was processing the traffic citation.  He decided to run Williams's name through the city's database to find out whether Williams was under a Fourth Amendment waiver, which permits warrantless searches under certain circumstances. Tooley discovered that Williams was on parole and probation for state felony offenses, and Tooley saw the notation "Fourth Amd." next to one of Williams's prior convictions.  Tooley did not have access to a copy of the waiver—just the shorthand notation. Based on the notation, Tooley decided to search the vehicle. During the search, the officers discovered a stolen pistol, extra magazines, and ammunition.  After the officers discovered the gun and ammunition, they arrested Williams for being a felon in possession of a firearm.

Williams was prosecuted in this Court for being a felon in possession of a firearm, and he filed a motion to suppress evidence of the gun.  The Court held a hearing and found that as a condition of his state parole on a prior forgery conviction, Williams agreed, in writing, that his "community supervision

3

officer or any other community supervision officer may, at any time, conduct a warrantless search of [his] person, papers, and place of residence, automobile, or any other property under [his] control." *Williams*, 409 F. Supp. 3d at 1344 (quoting Gov't Ex. 4, Parole Order 2, ECF No. 18-2 in 4:19-CR-26 (M.D. Ga.)). At the hearing, Tooley testified that he did not have access to the waiver, but if he had read the entire waiver, he would have concluded that a police officer "fall[s] under . . . community supervision just as much as a probation officer," and he believed "it would've given [him] the ability to search [Williams's] vehicle." Mot. to Suppress Hr'g Tr. 104:5-16, ECF No. 22 in 4:19-CR-26 (M.D. Ga.). The Court concluded that the waiver only permitted "certain warrantless searches by an employee of the Department of Community Supervision who supervises parolees" and that Williams "had no reasonable expectation that a patrol officer employed by the city police department could conduct a suspicionless search of his car during an investigative *Terry* stop." *Williams*, 409 F. Supp. 3d at 1348. Accordingly, the warrantless, suspicionless search was not permitted under the Fourth Amendment. *Id.* at 1349. And evidence of the firearm was suppressed, resulting in dismissal of the federal charges.

4

DISCUSSION

Williams brings § 1983 claims against Tooley based on the warrantless search of the car and the arrest. Williams invokes the Fourth, Fifth, Eighth, and Fourteenth Amendments as the bases for his claims. Obviously, his present claims implicate only the Fourth Amendment, which prohibits warrantless searches and arrests except in certain circumstances. Tooley asserts that he is entitled to qualified immunity on the claim arising out of the search and that the claim arising out of the arrest fails because the arrest was supported by probable cause.

## I. Claim Arising Out of the Search

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Gates v. Khokhar*, 884 F.3d 1290, 1296 (11th Cir. 2018) (quoting *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003)). There is no dispute that Tooley was a public official performing a discretionary function when he participated in the vehicle search. The Court already determined that the search of the vehicle violated the Fourth Amendment. *Williams*, 409 F. Supp. 3d at 1346-49. The remaining question, therefore, is whether the search violated a "clearly established" right—a right so well established "that that every

5

reasonable official would have understood that what he is doing violates that right." *Gates*, 884 F.3d at 1296 (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).

It has long been clearly established that a warrantless, suspicionless search violates the Fourth Amendment. But it is also clear that a suspicionless search of a parolee does not violate the Fourth Amendment if the parolee executed an unambiguous Fourth Amendment waiver. *See* Williams, 409 F. Supp. 3d at 1346 (citing *Samson v. California*, 547 U.S. 843, 846 (2006)). In this case, Tooley knew that Williams was a parolee who had executed some type of Fourth Amendment waiver. The Court, which had access to a copy of the Fourth Amendment waiver that Williams signed, concluded that the text of the waiver did not clearly and unambiguously inform Williams that he was subject to warrantless searches without any cause. *Id.* at 1348. The Court also noted that the waiver restricted warrantless searches of Williams to "community supervision officers," the specific meaning of which is defined in a Georgia statute. *Id.* Thus, the Court concluded that Williams's "condition of release [did] not so diminish or eliminate his reasonable expectation of privacy that the suspicionless search of his car under the circumstances presented here may be permitted under the Fourth Amendment." *Id.* at 1349.

6

There is no dispute, however, that Tooley believed based on the "Fourth Amd." notation in the city's database that Williams had signed a Fourth Amendment waiver (which he had). There is also no dispute that Tooley could not access the actual Fourth Amendment waiver but believed, based on his experience as a police officer, that the database notation meant that Williams had executed a Fourth Amendment waiver which would allow any law enforcement officer—not just parole officers—to conduct a search pursuant to the waiver. Under these circumstances, the Court cannot find that every reasonable officer faced with the same information would have known that Williams's Fourth Amendment waiver did not permit a police officer to conduct a search of Williams's vehicle. *Cf. Heien v. North Carolina*, 574 U.S. 54, 68 (2014) (concluding that an officer's reasonable mistake of the law resulted in reasonable suspicion to justify a traffic stop). Therefore, it was not clearly established on October 25, 2018 that a search of Williams's vehicle under the circumstances presented here would violate the Fourth Amendment. Accordingly, Tooley is entitled to qualified immunity on unreasonable search claim.

## II.  Claim Arising Out of the Arrest

Turning to Williams's claim based on the arrest, there is no question that a "warrantless arrest without probable cause violates the Fourth Amendment and forms a basis for a section

7

1983 claim." *Carter v. Butts Cnty.*, 821 F.3d 1310, 1319 (11th Cir. 2016) (quoting *Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996)). "But where probable cause supports an arrest, it acts as 'an absolute bar to a section 1983 action for false arrest.'" *Id.* (quoting *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004)). "Probable cause to arrest exists if 'the facts and circumstances within the officer's knowledge, of which he has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Id.* (quoting *Kingsland*, 382 F.3d at 1226).

Here, at the time of Williams's arrest, Tooley knew from his database search that Williams was a convicted felon. He also knew that he had found a gun under Williams's seat in the vehicle Williams was driving. Thus, a reasonable officer in Tooley's position could believe that Williams illegally possessed a firearm in violation of Georgia law. *See* O.C.G.A. § 16-11-131 (prohibiting possession of firearms by convicted felons). The fact that the firearm was discovered during an illegal search does not eliminate this probable cause under the circumstances presented here. The exclusionary rule, which prohibits the admission of evidence discovered during in an illegal search in a *criminal* action, "does not apply in a *civil*

8

suit against police officers." *Black v. Wigington*, 811 F.3d 1259, 1268 (11th Cir. 2016) (emphasis added). Thus, Tooley could rely on the firearm discovered in the vehicle to establish probable cause. This probable cause is an absolute bar to Williams's Fourth Amendment claim based on the arrest. Tooley is thus entitled to summary judgment on this claim.

## CONCLUSION

As discussed above, Tooley's summary judgment motion (ECF No. 23) is granted in its entirety.

IT IS SO ORDERED, this 9th day of May, 2022.

                                       S/Clay D. Land
                                       CLAY D. LAND
                                       U.S. DISTRICT COURT JUDGE
                                       MIDDLE DISTRICT OF GEORGIA